IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MORGAN STANLEY & CO., INC., a
Delaware corporation,

    Plaintiff,

v.

    Case No. 08-CV-81330-KAM/Johnson

NEIL B. SOLOMON, an individual,
and NEIL B. SOLOMON, P.A.,
a Florida Professional Association,

    Defendants.

_____/

**AMENDED COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE
RELIEF TO DISQUALIFY NEIL SOLOMON, ESQ. AND TO STAY ARBITRATIONS**

Plaintiff, MORGAN STANLEY & CO., INC. ("Plaintiff" or "Morgan Stanley"), by and through undersigned counsel, hereby files this Amended Complaint[1] for temporary and permanent injunctive relief to disqualify Defendants Neil B. Solomon ("Solomon") and Neil B. Solomon, P.A. ("P.A.") (collectively Defendants"), and to stay three arbitrations Defendants are prosecuting, and in support hereof, states as follows:

**GENERAL ALLEGATIONS**

1. Solomon is, through his law firm P.A., representing three retail customers in arbitrations before the Financial Industry Regulatory Authority ("FINRA") against Solomon's former client, Morgan Stanley. Solomon, for several years, represented Morgan Stanley before the same arbitral body (FINRA and its predecessor the NASD), in dozens of retail customer actions alleging the same theories and claims for relief Solomon now is employing against his old client. Integral to his cases, Solomon is using key confidences learned during his

_____

[1] This Amended Complaint is filed as a matter of course pursuant to Rule 15(a)(1), Fed. R. Civ. P.

representation of Morgan Stanley against the brokerage firm and is attacking the same arguments and litigation strategies he once propounded on Morgan Stanley's behalf. This is a classic case of a lawyer switching sides. Solomon and his firm P.A. should be disqualified and the arbitrations stayed pending resolution of this controversy.

2. This is an action for temporary and permanent injunctive relief relating to three arbitrations filed by Defendants, on behalf of three clients, wherein the amount in controversy exceeds $75,000 in damages, exclusive of interest, court costs and attorney's fees.

3. Morgan Stanley is a Delaware corporation with its principal place of business in New York.

4. Defendant Neil B. Solomon is a Florida citizen.

5. Defendant Neil B. Solomon, P.A. is a Florida incorporated professional association with its principal place of business in Jupiter, Florida. Upon information and belief, Neil Solomon is the sole principal of P.A..

6. As complete diversity of citizenship exists between the parties in this action, this court has jurisdiction to entertain this matter under 28 U.S.C. § 1332.

7. Venue is appropriate as this action arises from acts and omissions committed in whole or in part in Palm Beach County, Florida.

8. All conditions precedent to the institution of this action have occurred or all such conditions have been waived or otherwise excused by Defendants' conduct.

## BACKGROUND

9. Between 2001 and 2003, Solomon performed legal services for Morgan Stanley. Solomon performed these legal services for Morgan Stanley through Solomon's then employer, the Greenberg Traurig ("Greenberg") law firm. Solomon provided representation primarily in cases where retail investors, seeking to recover for disappointed economic expectations, brought

2

actions against Morgan Stanley. Customer claims Solomon represented Morgan Stanley on involved allegations of fraud, negligence, breach of contract, breach of fiduciary duty, failure to supervise, alleged violations of Chapter 517, Fla. Stat., and similar claims.

10. During his representation of Morgan Stanley, Solomon appeared in about 50 or more retail investor arbitrations and/or disputes against Morgan Stanley. Solomon billed approximately 1520 hours and about $313,000 worth of time.

11. At least three arbitrations involved allegations of wrongdoing at Morgan Stanley's Ft. Lauderdale branch.

12. Throughout this representation, Solomon gained intimate knowledge of proprietary, privileged and confidential information regarding Morgan Stanley, including its claims and litigation philosophy, its methods and procedures for defending claims in litigation, its legal policies, its approaches to settlement, its settlement limits, the decision making processes of its personnel regarding legal claims, and the particular personalities, expectations, negotiation techniques, and management styles of its personnel, as well as information regarding the administration of Morgan Stanley's various business operations and the internal workings of its organization. Included in these confidences entrusted to Solomon was information regarding Morgan Stanley's compensation practices and policies and procedures.

13. Morgan Stanley has worked to maintain the confidentiality of this information.

14. Solomon ceased representing Morgan Stanley in about the fall of 2003. However, from 2003 until about 2006, Solomon continued to work at Greenberg, which continued to represent Morgan Stanley in dozens of retail investor disputes.

15. During this period, Solomon worked closely with the team of lawyers who represented Morgan Stanley.

16. Solomon left Greenberg in about 2006.

17. In about July 2008, Solomon through his firm, P.A., undertook the representation of two retail customers, Darren Sadik and Hsiang Lin Wu, in matters adverse to Morgan Stanley. Two arbitrations were filed before FINRA, the securities arbitration forum. Solomon filed a third FINRA arbitration on behalf of two other retail customers, Melissa and Wayne Kreisberg, on about September 9, 2008.

18. The allegations in the three arbitrations (hereinafter the "Arbitrations") all involve Morgan Stanley's Ft. Lauderdale branch and the same broker, Adam Hendry. The contentions are similar to the allegations in many of the cases for which Solomon provided representation to Morgan Stanley over the course of the attorney-client relationship.

19. The Statements of Claim center largely around the broker's alleged lack of experience in the securities industry and Morgan Stanley's training and supervisory practices. The Statements of Claim are replete with references to proprietary, confidential, internal information about Morgan Stanley learned by Solomon in a position of trust as Morgan Stanley's counsel. For example, certain facts and issues put in issue in the Arbitrations involve:

- Morgan Stanley's broker training program, alleging that "it appears [Morgan Stanley's] training program does not emphasize the securities laws and regulations;"

- Morgan Stanley's compensation policies, contending that the broker supposedly "was making money for" Morgan Stanley's branch manager;

- A contention that "[u]pon information and belief, a [Morgan Stanley] branch manager's compensation is based, in large part, on the commissions and fees generated by those he is supposed to be supervising;"

- Morgan Stanley's management fees policies, noting that "[i]t will be interesting to discover whether [Morgan Stanley] calculates the management fee based on the full value of the securities owned rather than the net value of the account after subtracting the margin loan;"

- Morgan Stanley's defense strategies, including long analyses purporting to head off an argument, made by Morgan Stanley in virtually every retail customer case – and made by Solomon himself for Morgan Stanley – on the basis of much case law in Florida and nationally, that claims cannot be based on rules and alleged standards of conduct promulgated by Self Regulatory Organizations.

20. Indeed, many allegations about Morgan Stanley that are alleged to be upon "information and belief" involve facts a customer could not know and derive directly from confidences Solomon learned through his representation of Morgan Stanley.

21. Further, the claims on which the three Arbitrations are based, including failure to supervise, negligence, fraudulent misrepresentations, breach of fiduciary duty, breach of contract, and alleged violations of Florida's securities fraud statute, Chapter 517, are the very same claims Solomon defended as Morgan Stanley's counsel.

22. Morgan Stanley has not and does not consent to Solomon's or P.A.'s representation of the retail customers in the Arbitrations, or to Solomon's or P.A.'s use of any confidences, facts, or information learned by Solomon while counsel for Morgan Stanley.

23. In about early September 2008, Morgan Stanley wrote Solomon indicating Solomon had a conflict of interest in the Wu and Sadik arbitrations. In response, rather than conceding the conflict of interest, Defendants refused to withdraw and, in fact, filed the Kreisberg arbitration. Morgan Stanley wrote Solomon again in early November 2008 indicating its objection to the representations in all three Arbitrations and demanding that Solomon and P.A. withdraw. Again Defendants refused.

24. The representation of Morgan Stanley by Solomon gives rise, under Florida Rules of Professional Conduct, to an irrefutable presumption that confidences were shared in the course of that representation.

25.     The representation of Morgan Stanley undertaken by Solomon included the professional responsibility to maintain the confidences learned in that representation and to never use those confidences to the disadvantage of his client, Morgan Stanley. Those obligations has continued after the representation ended.

26.     In fact, Defendants put many of those confidences in issue in the Arbitrations, which Defendants seek to use to the disadvantage of Morgan Stanley.

27.     Confidences gained by Solomon in his representation of Morgan Stanley will continue to be used in the course of Defendants' representation in the Arbitrations, thus creating a "cat out of the bag" situation.

28.     The issues in the Arbitration, and the issues for which Solomon provided Morgan Stanley representation, are furthermore substantially related. Issues regarding alleged lack of supervision, violation of SRO rules, negligence, breach of fiduciary duty and similar allegations of wrongdoing with respect to investments made at Morgan Stanley were the subject of the cases for which Solomon repeatedly provided representation to Morgan Stanley.

29.     Moreover, in taking positions in litigation contrary to positions he took as counsel for Morgan Stanley, including but not limited to using SRO rules and alleged on-going fiduciary duties as supposed grounds for his claims, Solomon is directly attacking work he performed for Morgan Stanley.

30.     Solomon obtained the trust and confidence of Morgan Stanley in about 50 retail investor disputes only to turn around and sue Morgan Stanley for the very same types of claims he once defended. This has created an appearance of impropriety that undermines the integrity of the judicial system and the confidence which is placed by clients in their attorneys.

31. It would be a direct conflict of interest and would otherwise raise an appearance of impropriety for Solomon and P.A. to continue to be able to switch sides and represent the retail customers in the Arbitrations against Morgan Stanley.

32. Solomon and P.A. are prohibited under the Florida Rules of Professional Conduct from taking a position directly adverse to Morgan Stanley where the matters are substantially related, where Solomon and his firm P.A. intends to use confidences learned during his representation against Morgan Stanley, and/or where Solomon's representation in the matters gives rise to an appearance of impropriety. There is no time requirement or limitation on these prohibitions.

33. Further, as Solomon is disqualified, P.A. and any lawyer associated with P.A. is prohibited from representing a client against Morgan Stanley under the rules of professional conduct.

34. Because of the nature of the conflict of interest in the pending Arbitrations, Morgan Stanley seeks preliminary and permanent injunctive relief against Defendants to prevent the continued representation of the retail customers in the Arbitrations and to prevent further representation by Defendants against Morgan Stanley in substantially related matters which are materially adverse to Morgan Stanley.

35. Though these matters are pending in arbitration, matters of professional conduct are not within the scope or purview of the arbitrators. A ruling on Solomon's professional responsibility is within the domain of the Court.

36. Because the Arbitration is on-going and will require Solomon to share and expose further confidences of Morgan Stanley in its pursuit of the claims, Morgan Stanley also seeks a stay of the Arbitrations pending a determination of the disqualification issue.

37. Upon information and belief, P.A. is wholly owned, operated, and controlled by Solomon.

38. All conditions precedent to bringing this action have been satisfied.

## COUNT I
### Preliminary And Permanent Injunctive Relief

39. Paragraphs 1-38 are realleged as if set forth fully herein.

40. Morgan Stanley has suffered, and will continue to suffer, irreparable harm unless Solomon and P.A. are disqualified from representing retail customers in the Arbitrations, and from further representing any claimants against Morgan Stanley in matters which are substantially related and directly adverse to the interest of Morgan Stanley.

41. Morgan Stanley's only remedy is equitable relief as it lacks an adequate remedy at law.

42. Interpretive case law regarding the rules of professional conduct in this jurisdiction is clear and provides that such representation presents an impermissible conflict of interest. Therefore, Morgan Stanley has a substantial likelihood of the success on the merits in this action.

43. Key to the attorney-client relationship is trust that confidences exchanged between an attorney and client will remain confidential after the relationship ends. The granting of temporary and permanent injunctive relief preventing Defendant's continued and future representation of parties adverse to Morgan Stanley will serve the public interest and will foster the ability of clients to consult fully and freely with their attorneys knowing such confidences cannot be used against them in future matters. The granting of preliminary and permanent injunctive relief will serve, therefore, to enhance the integrity of the judicial system for the public at large.

WHEREFORE, Morgan Stanley respectfully requests this Court enter an order preliminarily and permanently enjoining Defendants Neil B. Solomon and Neil B. Solomon, P.A., from representing retail investors in the underlying Arbitrations, and further enjoining Neil B. Solomon and Neil B. Solomon, P.A., from representing any other plaintiff retail investors in substantially related matters which are directly adverse to the interests of Morgan Stanley and granting such other and further relief as this court deems just, necessary and proper.

## Count II
### Request to Stay Arbitration

44. Paragraphs 1-38 are realleged as if set forth fully herein.

45. The Arbitrations brought by Defendant and P.A. are pending, yet a serious conflict of interest is apparent which must be resolved before the arbitration can continue.

46. Matters of professional responsibility are outside the domain of the arbitrators. Such matters may only be addressed by a court of competent jurisdiction.

47. As continued representation of the retail customers in the Arbitrations, before a ruling on the issue of disqualification, will render meaningless any later decision to disqualify Defendant as confidences will have already been disclosed and used to the disadvantage of Morgan Stanley, it is imperative that the Arbitrations be stayed until a ruling regarding the disqualification can occur.

48. As Defendant and P.A. were aware that Morgan Stanley objected to its representation of the retail customers in this Arbitration, and was under a duty to make the clients aware of this objection, neither Solomon and P.A. nor their client will be prejudiced by any resulting delay to permit the Court to render a ruling on the disqualification issue before proceeding in the Arbitrations.

49. As such, Morgan Stanley seeks a stay of the Arbitrations until the disqualification issue may be addressed by this court.

WHEREFORE, Plaintiff Morgan Stanley respectfully requests that this Court stay the Arbitrations brought by the Solomon on behalf of its clients and that this court grant such other and further relief to Plaintiff Morgan Stanley as this Court deems just, necessary and proper.

Dated: November 12, 2008.

Respectfully submitted:

HomerBonner, P.A.
Attorneys for Morgan Stanley
The Four Seasons Tower
1441 Brickell Avenue
Suite 1200
Miami, Florida 33131
Telephone: (305) 350-5100
Telecopier: (305) 982-0064
E-mail: phomer@homerbonner.com

By: **/s Christopher King**
Peter W. Homer
Florida Bar No. 291250
Christopher King
Florida Bar No. 0123919

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via email and U.S. mail this 12th day of November, 2008 to Neil B. Solomon Neil B. Solomon, P.A., 4174 St. Lukes Lane, Jupiter, FL 33458, phone: 561-762-4991; fax: 561-626-2721; email: neilbsolomonesq@gmail.com.

**/s Christopher King**
Christopher King
