UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-81330-CIV-MARRA

MORGAN STANLEY & CO., INC., a
Delaware corporation,

Plaintiff,

vs.

NEIL B. SOLOMON, an individual and
NEIL B. SOLOMON, P.A., a Florida
Professional Association,

Defendants.
_____/

**OPINION AND ORDER**

     This cause is before the Court upon Plaintiff Morgan Stanley & Co., Inc.'s Motion for

Preliminary Injunctive Relief (DE 9).  The motion is fully briefed and the Court held a hearing on

January 22 and January 30, 2009.  The Court has carefully considered the briefs, the evidence

and the argument of counsel and is otherwise fully advised in the premises.

     The Court makes the following findings of fact and conclusions of law in connection with

the denial of the preliminary injunction and entry of final judgment in favor of Defendants Neil

B. Solomon and Neil B. Solomon, P.A..

I.  Findings of Fact

     Defendant Neil B. Solomon ("Solomon") is an attorney whose law practice currently

consists of representing plaintiffs in securities arbitrations. Mr. Solomon, through his law firm

Defendant Neil B. Solomon, P.A., currently represents three customers in arbitrations before the

Financial Industry Regulatory Authority against Plaintiff Morgan Stanley Co., Inc. ("Morgan

Stanley"). Morgan Stanley seeks preliminary and permanent injunctive relief enjoining Mr. Solomon and his firm from this representation as well as any future representation adverse to the interests of Morgan Stanley. In addition, Morgan Stanley seeks an order staying the arbitrations until a ruling on disqualification occurs.

From approximately November 2001 through June 2006, Mr. Solomon was employed as an associate at the law firm of Greenberg Traurig. During that time period, Greenberg Traurig represented Morgan Stanley with respect to securities litigation, which included handling arbitration claims and class action claims involving securities. The vast majority of the cases were arbitrations arising out of suits brought against Morgan Stanley by individuals who lost money in investments. Mr. Solomon worked on Morgan Stanley matters while an associate at Greenberg Traurig from approximately November 2001 through November 2003 and worked on other securities matters until June 2006. In the two-year period during which Mr. Solomon was engaged in the representation of Morgan Stanley, he billed about 1,500 hours of time.

Mr. Solomon's job responsibilities with respect to Morgan Stanley included responding to discovery, ranking arbitrators, research and writing, attending meetings and preparing pre-hearing memoranda for in-house attorneys. As part of his responsibilities, he would confer with Morgan Stanley brokers, branch office managers, branch administrative managers and in-house attorneys.[1] He tried two arbitrations and participated in one mediation and therefore needed to talk to branch members with respect to these matters. In talking to brokers, Mr. Solomon never discussed their training or saw documents relating to their compensation.

---

[1] Mr. Solomon worked with the supervisory and administrative staff in the Fort Lauderdale office, the office from which the arbitrations in question arise.

With respect to choosing arbitrators, Mr. Solomon would consult Greenberg Traurig's database on arbitrators. That database ranked arbitrators based on their backgrounds, history of prior awards and their preliminary rulings on matters such as discovery.  The database included information garnered from clients.[2]  Mr. Solomon's work on arbitrator selection for Morgan Stanley cases took place in 2001 and 2002 and only involved ranking arbitrators in three or four Morgan Stanley cases.  In total, Mr. Solomon testified that he spent about four or five hours on arbitrator rankings. He would look at arbitrator awards, the background and age of the arbitrators, find out other Greenberg Traurig's attorneys experience with a particular arbitrator, and put this information on a spreadsheet.  He would also recommend which arbitrators should be stricken. Many of the arbitrators ranked by Greenberg Traurig during the time Mr. Solomon worked there are still arbitrators today, however, when asked about arbitrators assigned to Morgan Stanley cases from his time at Greenberg Traurig, Mr. Solomon testified that he could only remember one of the arbitrators. At some point, Greenberg Traurig assigned another individual the responsibility of maintaining the arbitrator database, at which point Mr. Solomon was no longer involved in the ranking of arbitrators.  In fact, Mr. Solomon never saw the Greenberg Traurig arbitrator database after that.

In an arbitration, both sides are permitted to strike various arbitrators.  Once stricken, those arbitrators do not remain on the panel. Each side also ranks their preference for arbitrators. During the time Mr. Solomon worked at Greenberg Traurig, parties had unlimited strikes of arbitrators.  This is no longer the case.   Instead, the current system provides attorneys with a choice of 24 arbitrators in three different categories.  Within each category, attorneys may strike

[2] Information relating to arbitrator backgrounds and prior awards is pubic.

four.   Thus, as explained by Mr. Solomon, the current system works in such a way that if Morgan Stanley wants to strike an arbitrator, there is nothing that Mr. Solomon can do to prevent that arbitrator from being stricken.

In picking arbitrators today, Mr. Solomon examines prior awards and tries to discern whether an arbitrator is more claimant or respondent-friendly. In addition, he looks at their backgrounds and contacts colleagues who might have knowledge about the arbitrators.  Mr. Solomon is also a member of a claimants bar for securities arbitrations, which also provides information on arbitrators.

In dealing with discovery in securities arbitrations, there are standard discovery guides with which the parties are expected to comply.  Attorneys for either party, however, may request discovery materials in addition to that required by the standard discovery guides.  During his time at Greenberg Traurig, Mr. Solomon gained familiarity with Morgan Stanley's system for handling discovery matters in arbitrations.  With respect to discovery, Morgan Stanley would produce all documents indicated on the discovery guide.  In-house counsel would, however, share with Mr. Solomon documents that were not responsive to standard discovery requests. Regarding the arbitrations in question, Mr. Solomon has requested branch managers' compensation information, which is information not included in the discovery guide.

Furthermore, at Greenberg Traurig, Mr. Solomon handled settlement of cases which exposed him to Morgan Stanley's settlement evaluations. He became familiar with the compensation structure at Morgan Stanley and the personalities of the in-house legal department. He also learned what factors in-house attorneys felt was significant in terms of case settlement. Mr. Solomon worked on legal arguments that supported Morgan Stanley's position in the

arbitrations.   He is now taking opposing legal positions in his representation of clients suing

Morgan Stanley.  Finally, Ms. Alison Patton, in-house counsel who worked with Mr. Solomon,

stated that she would be unlikely to share as much information about Morgan Stanley with future

counsel should Mr. Solomon be allowed to bring claims against Morgan Stanley.  Mr. Solomon

stated that he only had one work-related conversation with Ms. Patton while employed by

Greenberg Traurig.

II.  Conclusions of Law

In moving for a preliminary injunction, Morgan Stanley argues that the legal

representation being provided by Mr. Solomon violates Rule 4.1-9 of the Florida Rules of

Professional Conduct.  That rule provides:

> A lawyer who has formally represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or a substantially related manner in which that person's interests are materially adverse to the interests of a former client unless the former client gives informed consent; or
>
> (b) use information relating to the representation to the disadvantage of the former client except as rule 4.1-6 would permit with respect to a client or when the information has become generally known.

The Court will examine the evidence in the case as it pertains to both subsections of this Rule.

1.  Section (a)

Morgan Stanley points to the following actions by Mr. Solomon as violative of subsection

(a) of the Rule: (1) Mr. Solomon's use of the same theories of recovery that he defended against

as counsel for Morgan Stanley; (2) Mr. Solomon's attack on legal arguments he advanced while

working at Greenberg Traurig; (3) the filing of a lawsuit against the Fort Lauderdale branch of

Morgan Stanley that he previously represented and (4) the filing of a lawsuit pitting Mr. Solomon

against the same in-house counsel with whom he worked while employed at Greenberg Traurig.

In response, Mr. Solomon states that the current claims are "at most" the same type of claims but are "wholly distinct problems of the same type." Furthermore, Mr. Solomon claims that he is not attacking the work he performed for Morgan Stanley but merely taking a contrary position against Morgan Stanley.

After careful review, the Court finds that Mr. Solomon has not run afoul of Rule 4.1-9(a). In making this ruling, the Court has examined the comment to this Rule. The comment states that, in applying this rule, it is necessary to determine "whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." The comment distinguishes between a lawyer who has been "directly involved in a specific transaction" and a lawyer who "recurrently handled a type of problem for a former client." In the latter circumstance, the lawyer would not be precluded from "later representing another client in a wholly distinct problem of the type even though the subsequent representation involves a position adverse to the prior client." Rule 4.1-9 (cmt). Based on the evidence presented, the Court finds that Mr. Solomon's representation falls in the latter category.

Here, the claims are the same type; that is, claims arising in the context of arbitrations brought by investors in securities against Morgan Stanley. Given that the claim is the same type, Morgan Stanley is correct that the same theories of recovery and legal arguments are being used by Mr. Solomon against Morgan Stanley. Likewise, the same individuals, i.e., members of Morgan Stanley's Fort Lauderdale branch and in-house counsel, are involved in the current law suits. These facts, however, do not demonstrate that the cases are "substantially related."

The case of Health Care & Retirement Corp. of Am., Inc. v. Bradley, 961 So. 2d 1071

(Fla. Dist. Ct. App. 2007) is instructive.  In Bradley, the court affirmed the denial of a motion to

disqualify counsel who represented the estate of a former nursing home patient which had filed

suit against a nursing home for negligence due to a fall and the existence of pressure ulcers.

Prior to that representation, the lawyer had represented the nursing home in over 60 cases, many

of which were negligence cases concerning pressure ulcers and falls.  The Bradley court, relying

on the comment to Rule  4.1-9, found that while the lawyer handled the same type of problem for

its former client, the current case raised a "wholly distinct" problem.  In so finding, the Bradley

court noted that "each negligence case turns on its own facts."  Id. at 1073-74.

The Bradley court distinguished its facts from a case relied upon by Morgan Stanley,

Sears, Roebuck & Co. v. Stansbury, 374 So. 2d 1051 (Fla. Dist. Ct. App. 1979).  In Stansbury, a

lawyer previously defended the designer and manufacturer of a rotary power lawnmower sold by

Sears against a negligent design claim.  The lawyer conferred with the company's in-house

lawyer and the company's engineer who designed the lawnmower and whom the lawyer retained

as an expert witness. Id. at 1052.  Several years later, the lawyer sued the same clients he

previously represented for personal injuries caused by a design defect in a rotary power

lawnmower designed by the same engineer.  The defendants moved to disqualify the lawyer.  The

Stansbury court found that the two cases were "strikingly" similar and noted the substantial

degree of the lawyer's participation in the prior litigation.  Id. at 1054. Moreover, as pointed out

by the Bradley court, the Stansbury lawyer attacked his own work in order to "establish the

defectiveness of the same lawnmower." Bradley, 961 So. 2d at 1073.

The Court finds that the instant facts are akin to Bradley, not Stansbury.  Bradley

concerned a lawyer who switched sides and brought cases under the same legal theories as those

previously defended.  Mr. Solomon now represents individuals suing Morgan Stanley under the same legal theories.  Instead of negligence cases, Mr. Solomon pursues suits against Morgan Stanley and its brokers arising out of failed investments in securities.  But like negligence cases, each of Mr. Solomon's cases involve unique facts.  On the other hand, in <u>Stansbury</u>, the lawyer sued his former client based on the identical facts at issue in the case he defended; <u>i.e.</u>, the defective design of a lawnmower.  Here, there is no showing that Mr. Solomon defended Morgan Stanley against claims either brought by the same individuals, involving the same securities or the same brokers.

Each plaintiff in the arbitrations will need to prove his or her case using evidence and witnesses that pertain to his or her unique set of facts.  Even assuming <u>arguendo</u> that Mr. Solomon knows some of Morgan Stanley's witnesses, that does not mean that Mr. Solomon will possess superior knowledge regarding what these witnesses know about these particular cases. Similar to the lawyer in <u>Bradley</u> who handled over 60 negligence cases, Mr. Solomon has experience handling securities arbitrations where Morgan Stanley is a party.  However, unlike <u>Stansbury</u>, there is no evidence demonstrating that Mr. Solomon would be attacking his own legal work.  At most, Morgan Stanley showed that Mr. Solomon is advancing opposite legal theories from those advanced when he represented Morgan Stanley.  However, those legal theories are of the type that would be raised by any competent legal counsel in these types of arbitrations.[3]  <u>See</u> Restatement (Third) of Law Governing Lawyers § 132 (2000) (cmt.) ("a lawyer may master a substantive area of the law while representing a client, but that does not

---

[3] The Court has read <u>Morgan Stanley DW, Inc. v. Kelley & Warren, P.A.</u>, No. 02-80225-CIV, 2002 WL 34382748 (S.D. Fla. May 10, 2002) and disagrees with its reasoning.  Given that it is not binding on this Court, the Court declines to follow it.

preclude the lawyer from later representing another client adversely to the first in a matter involving the same legal issues, if the matters factually are not substantially related.")

For the foregoing reasons, the Court finds that Defendants Neil B. Solomon and Neil B. Solomon, P.A. have not violated Rule 4.1-9(a) of the Florida Rules of Professional Conduct.

2.  Section (b)

Morgan Stanley argues that there is a substantial risk that Mr. Solomon is using confidential information against Morgan Stanley that he gained from his prior representation. Morgan Stanley points to Mr. Solomon's knowledge of compensation issues, broker training programs, internal policies regarding the firing of brokers, defense strategies and techniques, and information about arbitrators. In response, Mr. Solomon argues that the type of information at issue is "generally known."

Once an attorney-client relationship is shown, an irrefutable presumption arises that confidences were disclosed to the attorney.  See State Farm Mutual Automobile Ins. Co. v. K.A.W., 575 So. 2d 630, 633 (Fla. 1991) (irrefutable presumption that confidences were disclosed); Gaton v. Health Coalition, Inc., 745 So. 2d 510, 511 (Fla. Dist. Ct. App. 1999) (same); Boca Investors Group, Inc. v. Potash, 728 So. 2d 825, 825 (Fla. Dist. Ct. App. 1999) (same).  The comment to Rule 4.1-9(b) explains, however, that while information "acquired by [a] lawyer in the course of representing a client may not subsequently be used by [a] lawyer to the disadvantage of [a] client . . . information . . . that typically would be obtained by any reasonably prudent lawyer who had never represented the former client should be considered generally known and ordinarily would not be disqualifying."  Rule 4.1-9(b) (cmt.)

Morgan Stanley points to Tuazon v. Royal Carribean Cruises, Ltd., 641 So. 2d 417 (Fla.

9

Dist. Ct. App. 1994) to support of its position.  In that case, a plaintiff's attorney was disqualified from representing a client who was suing Royal Caribbean based on the attorney's prior employment as a claims adjuster for Royal Caribbean.  The Tuazon court found that the attorney had been "privy to the confidential procedures and policies of the [d]efendant."

Specifically, the court stated that the attorney had previously "adjusted, evaluated, investigated and handled claims . . . some of which claims were of the type involved in this case." Id. at 418 n.1.  The court also stated that the information was not "generally known." Id.

In contrast, Mr. Solomon relies upon Health Care and Retirement Corp. v. Bradley, 944 So. 2d 508 (Fla. Dist. Ct. App. 2006).  That case states as follows:

> In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation. A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.

Id. at 512; see also ABA Ann. Mod. Rules of Prof. Con., Rule 1.9 (cmt.) (matters are substantially related if there is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in a subsequent matter.)

After careful review, the Court finds that there is no substantial risk that Mr. Solomon has confidential information that can be used against Morgan Stanley.[4]  Clearly, Mr. Solomon has the

_____

[4] The Court also notes that, to the extent the Rule requires a showing that the matters are substantially related, the Court has found no substantial relationship between the current arbitrations and Mr. Solomon's previous work for Morgan Stanley. See Key Largo Rest., Inc. v.

type of "general knowledge" referenced in the 2006 <u>Bradley</u> case; namely, an understanding of Morgan Stanley's policies and practices.  Furthermore, the Court finds that Mr. Solomon's knowledge of Morgan Stanley's discovery procedure, organizational structure and internal policies falls under the category of information that any reasonably prudent lawyer who had not previously represented Morgan Stanley would obtain by virtue of filing suit against Morgan Stanley and conducting discovery.  With respect to the information learned by Mr. Solomon regarding the selection of arbitrators, the Court finds that there is no substantial risk that this information will be used to Morgan Stanley's disadvantage.  Several years have passed since Mr. Solomon worked on Morgan Stanley matters and there has been no showing that Mr. Solomon possesses any recollection of Morgan Stanley's arbitrator rankings.[5]  Furthermore, the system for selecting arbitrators has changed since Mr. Solomon's representation of Morgan Stanley and Mr. Solomon cannot prevent Morgan Stanley from striking an arbitrator it would disfavor.  Mr. Solomon also testified that his approach to picking an arbitrator involves contacting colleagues and professional organizations and conducing independent research.  Put another way, by examining public information regarding the history of arbitrator awards, any competent lawyer could come to the same conclusion regarding which arbitrators a brokerage firm likely would or would not select.

In making this ruling, the Court finds Morgan Stanley's reliance on <u>Tuazon</u> unavailing. That case noted that the information possessed by that lawyer was not "generally known."  Here, the Court's factual finding differs in that regard.   Moreover, the facts in <u>Tuazon</u> involved a

---

<u>T.H. Old Town Assocs., Ltd.</u>, 759 So. 2d 690, 693 (Fla. Dist. Ct. App. 2000).

[5] The Court observes that the arbitrator database employed by Greenberg Traurig to rank arbitrators  is more akin to attorney work product.  Of course, work product often is based upon attorney-client confidential information.

former employee of Royal Carribean. By virtue of that status, the former employee possessed considerably more knowledge than an attorney who had previously represented Royal Carribean. In other words, the Court finds that the Bradley case is more applicable to the instant case. Thus, the Court chooses to follow that reasoning.

Morgan Stanley also argues that Mr. Solomon can be disqualified based on the appearance of impropriety.  The Court rejects this claim.  Simply put, based on the Court's finding that Mr. Solomon has not violated either subsection of  Rule 4.1-9, there is no basis to find the appearance of impropriety.

Lastly, a party seeking a preliminary injunction must show the following: (1) a substantial likelihood of success on the merits; (2) irreparable injury; (3) that the threatened injury to Plaintiff outweighs the harm an injunction may cause Defendants; and (4) that granting the injunction would not harm the public interest. See International Cosmetics Exchange,Inc v. Gapardis Health & Beauty, Inc., 303 F.3d 1242, 1246 (11th Cir. 2002); All Care Nursing Svc., Inc. v. Bethesda Memorial Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989).  Given that Plaintiff has not shown a substantial likelihood of success on the merits, the issuance of a preliminary injunction is not warranted.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff Morgan Stanley & Co., Inc.'s Motion for Preliminary Injunctive Relief (DE 9) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 19th day of February, 2009.

 

_____
KENNETH A. MARRA
United States District Judge